UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

David Landers,

    Plaintiff,                                                          Case No. 1:13cv557

                                                                     Judge Michael R. Barrett

Burd Brothers Transportation, Inc,

    Defendant.

## OPINION & ORDER

This matter is before the Court upon Defendant Burd Brothers Transportation, Inc.'s Motion for Summary Judgment. (Doc. 27). Plaintiff filed a Memorandum in Opposition (Doc. 41), and Defendant filed a Reply (Doc. 42).

**I.**    **BACKGROUND**

Plaintiff David Landers was hired by Defendant Burd Brothers Transportation, Inc. in 2010 as a temporary employee. After a six-month period, Defendant made Plaintiff a regular employee. (Doc. 31, David Landers Dep. at 28-29). Plaintiff was employed by Defendant as one of fifteen semi-truck drivers. (Id. at 36). While he was working for Defendant, Plaintiff was Defendant's only black employee. (Id. at 46). As a driver, Plaintiff's duties included making pick-ups and deliveries according to the routes assigned and instructions given by Defendant's management. (Id. at 36). Plaintiff reported primarily to Defendant's Dispatcher, Larry Scott, who reported to James Taylor, the Operations Manager, who in turn reported to Tyler Burdick, President of Operations. (Id. at 30, 38).

In January and February of 2012, Plaintiff was given a written warning for two accidents, a customer complaint and failing to get a bill of lading signed by a customer. (Doc. 27-1, PAGEID # 155). Plaintiff was placed on a 90-day probationary period. During that time, Plaintiff successfully completed an "action plan" which included the "elimination of any breakdown of communications/disputes." Plaintiff was told that upon successful completion of the probationary period, the action plan would be removed from his file.

During the summer of 2012, Scott dispatched Plaintiff to a customer for a pick up. The customer's dock manager called Plaintiff a "f'ing nigger." Plaintiff reported this to Scott. (Doc. 36, Larry Scott Dep. 65-66). Plaintiff asked to not be sent to that customer again. Scott dispatched Plaintiff to the same customer on four to six more occasions because there were no other drivers available. (Id. at 65).

Plaintiff began to notice that Scott allowed the other drivers to make changes to their scheduled runs, but did not do the same for Plaintiff. Plaintiff claims that during June, July and August of 2012 he complained to Taylor and told Taylor that he thought this treatment by Scott was racially motivated. (Landers Dep. at 55-57).

There were three incidents on August 31, 2012 which Defendant states led to Plaintiff's termination.[1]  First, Defendant claims Plaintiff was instructed to pick up two

---

[1] The Court notes that while Defendant's stated reason for Plaintiff's termination always centers around the events of August 31, 2012, the exact details shift somewhat. In Tyler Burdick's deposition, he identified three reasons for Plaintiff's termination: (1) on June 28, 2011, Plaintiff stated he did not have room in his trailer to pick up a certain load, but he actually did; (2) on August 31, 2012, Plaintiff failed to follow Scott's instructions, and only picked up one load when he was told to pick up two loads; (3) on August 31, 2012, Plaintiff stated his trailer was full when it was not. (Burdick Dep. at 42-59).

On September 4, 2012, Burdick, Judy and Taylor completed and signed an "Associate Separation/Termination Form." (Pl. Exh. 20). On the Form, the stated "Reason for Separation"

separate loads from a customer, and then call Scott when both loads were picked up. Instead, Plaintiff only received one load. Defendant had to send another driver to pick up the second load. Second, when Plaintiff returned that day after only picking up the single load, Plaintiff turned off his truck and began preparing to leave for the day, without first checking if he could do so. Third, Plaintiff was sent back out for several pick ups, but Plaintiff called and told Scott that he did not have room for the final one, which was one skid. When Plaintiff returned, it was discovered that Plaintiff's trailer was not full, and Plaintiff could have picked up the final load. Tyler Burdick instructed Taylor to take pictures of Plaintiff's trailer, but Defendant no longer has these photos. (Burdick Dep. at 63-64).

At the end of the day on August 31, 2012, Plaintiff went into Taylor's office and told Taylor that he felt that he was being discriminated against because of his race. (See Doc. 33-12 & 13-13).

Defendant terminated Plaintiff's employment on September 4, 2012.

On September 7, 2012, Plaintiff met with Taylor and Kyle Judy, who is Defendant's Human Resources Manager. (Doc. 28). During the meeting, Judy agreed that Defendant would not contest Plaintiff's claim for unemployment compensation benefits and would inform potential employers that Plaintiff's employment had terminated because of "lack of work," if Plaintiff signed a letter of resignation written by Judy.

In his Amended Complaint, Plaintiff brings claims of race discrimination and retaliation pursuant to 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42

---

is "two incidents on Friday, August 31st 2012," which are (1) failing to follow Scott's directions and to notify him in connection with the two loads; and (2) failing to properly report detail available space left on his trailer for additional pick-up. (Doc. 31-18).

U.S.C. § 2000e, *et seq.*, and Ohio Revised Code § 4112.02.  (Doc. 20).  Defendant moves for summary judgment on all claims.

## II.     ANALYSIS

### A.     Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" only if its resolution affects the outcome of the suit.  *Id.*  A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party has the burden of showing an absence of evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has met its burden of production, the non-moving party cannot rest on his or her pleadings, but must present significant probative evidence in support of his or her complaint to defeat the motion for summary judgment.  *Anderson*, 477 U.S. at 248-49.  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Id.* at 252.  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to

4

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### B. Race discrimination

Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to ... employment, because of such individual's race ..." 42 U.S.C. § 2000e–2(a)(1). Ohio law similarly makes race discrimination unlawful. Ohio Rev. Code § 4112.02. The Ohio Supreme Court has held that federal case law interpreting Title VII is equally applicable to cases of discrimination under Ohio law. *Staunch v. Cont'l Airlines, Inc.,* 511 F.3d 625, 631 (6th Cir. 2008) (citing *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n,* 66 Ohio St.2d 192, 421 N.E.2d 128, 131 (Ohio 1981)). The same analysis and standards apply to § 1981 claims as to Title VII claims. *Brooks v. Dent*, 795 F. Supp. 2d 694, 699 (S.D. Ohio 2011) (citing *Jackson v. Quanex Corp.,* 191 F.3d 647, 658 (6th Cir. 1999)). Therefore, the following analysis applies to all of Plaintiff's claims of discrimination. *See Staunch,* 511 F.3d at 631.

A plaintiff must produce either direct evidence or circumstantial evidence of discrimination. *Grizzell v. City of Columbus Div. of Police,* 461 F.3d 711, 719 (6th Cir. 2006) (citing *DiCarlo v. Potter,* 358 F.3d 408, 414 (6th Cir. 2004)); *Holbrook v. LexisNexis,* 169 Ohio App.3d 345, 862 N.E.2d 892, 896 (Ohio Ct. App. 2006). Plaintiff does not assert the existence of direct evidence of discrimination, and only relies on circumstantial evidence of discrimination.

Where a plaintiff relies on circumstantial evidence, a three-part burden-shifting framework applies. *White v. Baxter Healthcare Corp.,* 533 F.3d 381, 391 (6th Cir. 2008)

(citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), as subsequently modified by *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). Under the first step, "the plaintiff bears the initial 'not onerous' burden of establishing a prima facie case of discrimination by a preponderance of the evidence." *Id.* (quoting *Burdine,* 450 U.S. at 253). Next, if a plaintiff can establish a prima facie case, "the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" *Burdine,* 450 U.S. at 253 (quoting *McDonnell Douglas,* 441 U.S. at 802). Third, if the defendant articulates such a reason, the burden shifts back to the plaintiff to present evidence that the non-discriminatory reason offered by the defendant was merely a pretext for discrimination. *Id.; Bryson v. Regis Corp.,* 498 F.3d 561, 570 (6th Cir. 2007).

To establish a prima facie case of race discrimination, "the plaintiff must show that '(1) he or she was a member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees.'" *Wright v. Murray Guard, Inc.,* 455 F.3d 702, 707 (6th Cir. 2006) (quoting *DiCarlo,* 358 F.3d at 415).

Defendant does not dispute that Plaintiff can establish a prima facie case of discrimination. Instead, Defendant explains that Plaintiff was terminated for poor performance. Plaintiff responds that this reason is pretext for race discrimination.

"[A] plaintiff can show pretext in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the

6

employer's action, or (3) that they were insufficient to motivate the employer's action." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (citing *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 460 (6th Cir. 2004). "The plaintiff must produce 'sufficient evidence from which the jury could reasonably reject the defendants' explanation and infer that the defendants intentionally discriminated against [him].'" *Upshaw v. Ford Motor Co.,* 576 F.3d 576, 586 (6th Cir. 2009) (quoting *Johnson v. Kroger Co.,* 319 F.3d 858, 866 (6th Cir. 2003)).

Plaintiff first argues that on August 31, 2012, he did not fail to follow Scott's instructions, nor did he mislead Scott, as Plaintiff believed that his truck could not hold another load.  Plaintiff argues because the pictures that allegedly show that Plaintiff had space for the final load are missing, this is further evidence of pretext.  Plaintiff also argues that announcing his termination on September 4, 2012, without questioning him to get his side of the story is evidence of unlawful motive.

Plaintiff explains that when he arrived back at the company on August 31, 2012, the load in his truck had shifted in transit.  (Doc. 41-1, David Landers Decl. ¶ 6). However, according to Plaintiff: "Despite this shifting, there was not significantly more room on my truck for additional freight.  There was not enough room on my truck for an additional pallet. There was certainly not enough room on my truck for an additional three, four, or five pallets."  (Id.)  Taylor testified to the contrary: "I waited for Dave to get back that evening and when he backed into the dock I looked at his truck and he had the room to get the pallet, to get the skid, and I started taking pictures of his truck." (Doc. 33, James Taylor Dep. at 49-50).  Taylor explained that there was room for four or five pallets.  (Id. at 53).  Taylor explained that this was in keeping with the dispatch

7

system which "keeps track of where the drivers are going, where you dispatched them to, how much weight they have on their truck, how many skid spots they have on their truck." (Id. at 52).

Burdick instructed Taylor to take photos because Burdick had to leave early and could not wait for Plaintiff to return. (Burdick Dep. at 57, 59). Burdick testified that he knew Plaintiff had room for one more skid because he knew the freight in the area where Plaintiff was picking up that day, and "there's nothing that's out of the ordinary, oversized or anything like that, that he would have room to get all the shipments on him." (Id.) Before he left for the day, Burdick instructed Taylor to check Plaintiff's truck and "if there's room on there, we're going to let him go." (Id. at 59).

A claim for employment discrimination "is not a vehicle for litigating the accuracy of the employer's grounds for termination." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012). "If an employer has an 'honest belief' in the nondiscriminatory basis upon which it has made its employment decision (i.e. the adverse action), then the employee will not be able to establish pretext." *Id*. at 530-31 (quoting *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001)). As the Sixth Circuit has explained:

> The employer's claim of honest belief is necessarily tied to the nature of its investigation and disciplinary decision process. We have noted that the "key inquiry . . . is 'whether the employer made a reasonably informed and considered decision before taking' the complained-of action." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598-99 (6th Cir. 2007) (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998)). The employer certainly must point to particularized facts upon which it reasonably relied. But "we do not require that the decisional process used by the employer be optimal or that it left no stone unturned." *Smith*, 155 F.3d at 807; *see also Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 398 (6th Cir. 2008).

8

*Id.* at 531. Accordingly, the Court is not concerned with whether there actually was or was not room for the pallet in Plaintiff's truck on August 31, 2012. Instead, the Court must consider whether Defendant had an honestly held belief that there was room for the pallet Plaintiff was asked to pick up.

Defendant has presented the testimony of both Burdick and Taylor that Plaintiff had room for one more pallet. This testimony includes "particularized facts" upon which Defendant relied in deciding to terminate Plaintiff. The only evidence which Plaintiff has presented that this belief was false is his own deposition and declaration. This evidence is not sufficient to show that Defendant's decisional process is "unworthy of credence." *Smith*, 155 F.3d at 807. As the Sixth Circuit has explained, "[a]n employee's bare assertion that the employer's proffered reason has no basis in fact is insufficient to call an employer's honest belief into question, and fails to create a genuine issue of material fact." *Tingle*, 692 F.3d at 531 (quoting *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012).

Plaintiff argues that Defendant's contention that it was Burdick's decision alone to terminate Plaintiff, and that this decision was made by Burdick on August 31, 2012, is false, and not substantiated by the evidence. Plaintiff cites Judy's testimony, in which Judy stated that the decision to terminate was a collective one, as well as a recording of the September 7, 2012 meeting between Judy, Taylor, and Plaintiff, both of which confirm that the decision to terminate was made collectively by Defendant's management on September 4, 2012. The Court finds, in this instance, that a determination as to who made the decision to terminate Plaintiff or when it was made has no bearing on whether the reason for his termination was false. Burdick testified

that on August 31, 2012, he told Taylor if it turned out that Plaintiff had room in his truck for the pallet, "we're going to let him go." (Burdick Dep. at 59). The mere fact that later on, on September 4, 2012, there was additional discussion with Judy, Defendant's Human Resources Manager, does not show pretext. Instead, it would show that Defendant made a "reasonably informed and considered decision before taking the complained-of action." *See Tingle*, 692 F.3d at 531.

Plaintiff also argues that the September 7, 2012 meeting, following his termination, serves as evidence of pretext because Defendant gave Plaintiff an opportunity to resign his employment, and create the illusion of a legitimate end to Plaintiff's employment.

The Court finds that the September 7, 2012 meeting is not evidence of pretext. While the question of whether or not Plaintiff voluntarily resigned might have some bearing on whether Plaintiff suffered an adverse employment decision, Defendant has not disputed that Plaintiff has established a prima facie case of race discrimination. Instead, Defendant challenged Plaintiff's ability to show pretext. Because the Court finds that Plaintiff has not shown that Defendant's stated reason for termination is pretext for discrimination, Defendant is entitled to summary judgment on Plaintiff's claims for discrimination pursuant to Section 1981, Title VII, and Ohio Revised Code § 4112.02.

**C.** **Retaliation**

Plaintiff has brought claims of retaliation under federal law and under Ohio law. Under Title VII, the *McDonnell Douglas* burden-shifting approach also applies to retaliation claims. *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 713 (6th Cir. 2007)

10

(citing *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007)); *see also Herrera v. Churchill McGee*, LLC, 545 F. App'x 499, 500-01 (6th Cir. 2013) (citing Wade v. Knoxville Utilities Bd., 259 F.3d 452, 464 (6th Cir. 2001)) ("Section 1981 retaliation claims are governed by the same burden-shifting standards as Title VII retaliation claims."). Because the Ohio Supreme Court has held that an action under Ohio Revised Code § 4112 mirrors that under Title VII, this Court analyze Plaintiff's state and federal claims of retaliation solely under Title VII. *Accord Abbott v. Crown Motor Co.*, 348 F.3d 537, 541 (6th Cir. 2003) (citing *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St.2d 192, 421 N.E.2d 128 (1981)).

To establish a prima facie case of retaliation, a plaintiff must establish the following four elements: "(1) the plaintiff engaged in activity protected under Title VII; (2) plaintiff's exercise of [his] protected rights was known to defendant; (3) an adverse employment action was subsequently taken against the employee or the employee was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment." *Garner v. Cuyahoga Cnty. Juvenile Court,* 554 F.3d 624, 639 (6th Cir. 2009). Defendant only argues that Plaintiff cannot establish a causal connection between Plaintiff's complaints of discrimination and his termination. Plaintiff relies on the temporal proximity of his complaint of discrimination to Taylor on August 31, 2012 and his termination on September 4, 2012.

However, even if Plaintiff has established a prima facie case, under the burden-shifting framework of *McDonnell Douglas*, the Court finds that Plaintiff has not shown Defendant's proffered reason for Plaintiff's termination is pretext for discrimination.

While "suspicious timing is a strong indicator of pretext when accompanied by some other, independent evidence," *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012) (citing *Bell v. Prefix, Inc.*, 321 Fed.Appx. 423, 431 (6th Cir. 2009)), Plaintiff has not presented other independent evidence. As explained above, Plaintiff has not produced "sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants . . . did not honestly believe in the proffered nondiscriminatory reason for its adverse employment action." *Tingle*, 692 F.3d at 531 (quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir. 2001). Accordingly, Defendant is entitled to summary judgment on Plaintiff's claims for retaliation pursuant to Section 1981, Title VII, and Ohio Revised Code § 4112.02.

### III.  CONCLUSION

Based on the foregoing, Defendant Burd Brothers Transportation, Inc.'s Motion for Summary Judgment (Doc. 27) is **GRANTED**. This matter is **CLOSED** and **TERMINATED** from the docket of this Court.

**IT IS SO ORDERED.**

                                                         */s/ Michael R. Barrett*
                                                        JUDGE MICHAEL R. BARRETT